1  Todd M. Friedman (SBN 216752)
2  Adrian R. Bacon (SBN 280332)
   LAW OFFICES OF TODD M. FRIEDMAN, P.C.
3  21550 Oxnard St., Suite 780
   Woodland Hills, CA 91367
4  Phone: 323-306-4234
5  Fax: 866-633-0228
6  tfriedman@toddflaw.com
   abacon@toddflaw.com
7  *Attorneys for Plaintiffs*,

8

                **UNITED STATES DISTRICT COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **LUCINE TRIM**, individually and on      )   Case No. 2:19-CV-10751-FMO-AGR
    behalf of all others similarly situated,  )
12                                            )   **RESPONSE TO COURT ORDER**
    Plaintiff,                                )   **REGARDING NOTICE OF CLASS**
13                                            )   **ALLEGATIONS**
                                              )
14          vs.                               )
                                              )   Hon Fernando M. Olguin
15                                            )
                                              )
16  **HIGHER LEVEL PROCESSING**              )
    **INC.; BREA FINANCIAL GROUP,**          )
17  **LLC, THE, D/B/A PUB CLUB**             )
    **LEADS;** DOES 1 through 10,            )
18  inclusive,                                )
                                              )
19                                            )
                                              )
20  Defendants.                               )
                                              )
21  _____  )

22

23          Plaintiff Lucine Trim ("Plaintiff") hereby files this Response to the Court's

24  Order dated February 19, 2021 (Dkt. No. 43) regarding the Notice of Settlement

25  (Dkt. No. 42).

26

27

28

**INTRODUCTION**

The Court expressed concerns regarding the individual nature of the settlement of the class action.  Plaintiff addresses these concerns in turn.

First and foremost, the case was resolved on an individual basis, not on a class-wide basis, with both named Defendants.  The dismissal of the action will have no direct prejudicial impact on the claims of putative class members, whose claims will be dismissed without prejudice.  The class has not been certified, and therefore F.R.C.P. 23(e) does not apply to the resolution of this case as to Plaintiff on an individual basis, as will be discussed in detail with case citations below.

Second, the class members will not require notice of the settlement of this action in such a manner, unless the facts of the case warrant a finding by the Court that class members will indirectly be prejudiced by the dismissal of their claims without prejudice.  The *Diaz* factors are designed to analyze prejudice to unnamed class members through analysis of: (1) potential class members' "possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances" (2) "lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations" (3) "any settlement or concession of class interests made by the class representative or counsel in order to further their own interests." *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir.1989).

These factors are not satisfied in the case at bar, as will be discussed below in greater detail.  No class members have contacted Plaintiff's counsel's office regarding the claims in this action, this case was not widely publicized by news outlets, and Plaintiff's counsel is not aware of a single putative class member who is aware of or relying on the case.  Moreover, there as adequate time for class members to bring their own claims, as the statute of limitations is four years under the TCPA, and the events that gave rise to this action occurred in the late 2018 time

frame.   Thus, there remain approximately two years left on the statute of limitations, plus an argument that the claims were tolled during the pendency of this case.   Finally, there was no effort to resolve this case in a manner that furthered the interest of Plaintiff or counsel over the interests of the class.   Plaintiff and her Counsel strongly desired to resolve the case on a class-wide basis, but both Defendants provided evidence of financial condition that was compelling in demonstrating an inability to fund even the most modest of class action settlements. The case was resolved on modest terms.   Plaintiff is able to provide a copy of the release *in camera* if the Court so orders.

## FACTS AND LEGAL ISSUES

### I.    Factual Background

Plaintiff brought this action seeking damages and any other available legal or equitable remedies resulting from the alleged actions of Higher Level Processing, Inc. ("Higher Level"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq*. ("TCPA"), thereby invading Plaintiffs' privacy.

After filing the action, Higher Level provided lead data that was allegedly provided by a vendor identified as Brea Financial Group, LLC, DBA Pub Club Leads ("Brea" and collectively with Higher Level "Defendants").   Plaintiff's counsel investigated the lead data and determined that it was technologically impossible that the opt in data was generated from the website that was being represented by Defendants.   These facts were asserted in a First Amended Complaint which was filed against both Defendants.

Both Defendants denied wrongdoing, for a variety of legal and factual reasons that are not of relevance to this Notice, given that they were not the reason that Plaintiff resolved the case in the manner in which it was resolved.   In other

words, the risks to merits issues and certification issues, while they were present, were not the reason the case was ultimately resolved on an individual basis.

The parties engaged in written discovery.  On November 19, 2020, counsel for Brea advised Plaintiff's counsel that, in addition to having their business decimated by the COVID pandemic, Brea was facing bigger problems, namely a court-appointed receiver in a Consumer Financial Protection Bureau enforcement action that was asserting claims against Brea in an amount totaling $14 million. Documentation was provided relating to this enforcement action, including publicly available documents from the docket of the action, correspondence advising of an asset freeze and TRO, and requesting a preservation of assets and documentation by the receiver, from Brea, suggesting that Brea would be subject to a TRO and asset freeze next.

The case at issue is *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center, Inc.,* et al., Case No. 8:19-cv-01998-JVS-JDE. Plaintiff's Counsel was aware of this case because they had to dismiss another pending putative class action without prejudice for no consideration after receiving notice of the action from the receiver.  See *Nebuchin, Vadim v. Premier Student Loan Center*, No. 4:19-cv-06335-KAW (N.D. Cal.)

Plaintiff's counsel was unaware that Brea had any involvement in the CFPB action until Brea's counsel advised of such on November 19, 2020.  According to the filings, it appeared that the direct targets of the CFPB lawsuit had purchased their leads from Brea.  Inferences could be drawn from this, but ultimately Plaintiff's counsel was provided with information and documentation which strongly suggested that any revenues obtained as a result of this business would be sought to remedy the grievances in the CFPB action, putting Brea's already-suffering business in jeopardy.  Given what Plaintiff's counsel had uncovered regarding the allegations of Brea's arguable manufacturing of lead data for purposes of selling consumer data to robodialers, this was not entirely surprising.

The government seemed to believe that Brea was up to the same conduct that Plaintiff and undersigned counsel believed, and it was only a matter of time before the asset freeze resulted in this case being stayed and ultimately forced into a dismissal, as happened in the *Nebuchin* action.  Accordingly, a modest individual resolution was negotiated by Plaintiff with Brea before that happened, after undersigned counsel determined that Brea would ultimately not be able to meaningfully contribute to any potential class-wide resolution, now or ever, and was likely going to be out of business in the near future.

Higher Level responded to Plaintiff's discovery.  The parties were meeting and conferring regarding further production of documents, and a Rule 30(b)(6) deposition was scheduled to take place on March 18, 2021.  During this process, Higher Level's counsel advised that Higher Level was experiencing financial hardship and would be unable to shoulder any form of class-wide obligations on their own.  Plaintiff's counsel requested financial documents in order to assess whether this was supported.  After a review of the financial documents, Plaintiff's counsel determined that Higher Level indeed would be unable to provide any form of meaningful relief to a Class, and indeed, appeared not even to have enough funds to pay for the anticipated cost of class notice and administration if the class were certified and resolved, much less pay for any monetary relief for class members.  There was, in short, no foreseeably feasible way to provide a class-wide benefit in the case.

By that point, Plaintiff's counsel had incurred significant fees and costs.  The parties ultimately agreed to resolve the case for modest terms that were lower than counsels' fees and costs, and require a payment plan.  It is neither the case that Plaintiff is being compensated more than she is legally entitled to if she prevailed on her claims, nor the case that counsel are being compensated more than their reasonable lodestar, and therefore, this release, on its face, could not be construed to be a product of collusion.  Nor was this a case where there was a reasonable

likelihood that a class could have benefitted from further litigation efforts by undersigned counsel.  Indeed, undersigned counsel would have strongly preferred to have litigated to a class-wide result, and would have been not only morally and ethically incentivized to do so, but financially motivated to do so as well, given the Ninth Circuit's 25% benchmark on common fund class settlements.  However, such a course was simply not feasible, ultimately making class certification *not* the superior method of adjudication in this case.

The agreement is confidential, and the amount cannot be disclosed publicly; however upon request, Plaintiff is able to produce it *in camera* to the Court for review.  The release specifies that the claims of putative class members will be dismissed without prejudice.

No class members have contacted Plaintiff's counsel regarding the allegations in the Complaint.  To undersigned counsels' knowledge, no class members are relying on this case in order to pursue their claims.  There has been no media publication or outreach by undersigned counsel in order to notify class members of this action yet.  Class notice has not been disseminated.  The class has not yet been certified.  Other than a public docket, a Google search turns up no substantive results when the case title is typed into a web browser.  There have been no Law360 articles of blog posts about this case based on a review of Google.

## II.    FRCP 23(e) Pre-Certification

Based on Defendants' financial conditions and diligent discussions on the unlikelihood of success of achieving a favorable class-wide result, the Parties have reached a resolution.

Where a plaintiff voluntarily dismisses class claims without prejudice and does so prior to a ruling on class certification, as is the case here, such dismissal requires neither court approval nor classwide notice because the putative class is not bound by this type of dismissal. *See Hudson v. First Transit, Inc.*, 2011 WL 3681731 (N.D.Cal.) (citing *Weiss v. Regal Collections,* 385 F.3d 337, 349, n 21 (3d

Cir. 2004) (recognizing that amended Rule 23 arguably supersedes prior rulings of required court supervision of dismissals of class claims in the pre-certification context); *see also Robb v. Stericycle, Inc.*, No. Civ.A.05-1370, 2005 WL 2304475, at *8-9 (W.D. La. Aug. 19, 2005) (noting that pre-amendment Rule 23(e) holdings as to the requirement of pre-certification approval and notice relied upon a version of the rule "no longer in effect")).

While the current version of Rule 23(e) does not require court approved notice, Plaintiff now seeks the Court's approval, in conformity with the Court's Order, and as a cautionary step and in light of several post-2003 decisions from district courts in the Ninth Circuit that reflect a continuing adherence to the pre-2003 rule of seeking approval of pre-certification settlements. *Tombline v. Wells Fargo Bank, N.A.*, 2014 WL 5140048 (N.D. Cal. Oct. 10, 2014); *Mahan v. Trex Co., Inc.*, No. 5:09-cv-00670 JF/PVT, 2010 WL 4916417, at *2-3 (N.D. Cal. Nov. 22, 2010); *Castro v. Zenith Acquisition Corp.*, No. C 06-04163, 2007 WL 81905, at * 1 (N.D. Cal. Jan. 9, 2007); *Singer v. Am. Airlines Fed. Credit Union*, No. C 05-04961, 2006 WL 3093759, at *2 (N.D. Cal. Oct. 30, 2006); *Mansourian v. Bd. of Regents of Univ. of Calif. at Davis*, No. CIV S-03-2591, 2007 WL 1722975, at *1 (E.D. Cal. June 12, 2007).

The *Diaz* factors are designed to analyze prejudice to unnamed class members through analysis of: (1) potential class members' "possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances" (2) "lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations" (3) "any settlement or concession of class interests made by the class representative or counsel in order to further their own interests." *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir.1989).

i.      *Absent Class Members Have Not Relied on Plaintiff's Class Claims Against Defendants.*

After a diligent search of news articles and other media, it is highly unlikely that there are any putative class members who are aware of or relied on Plaintiffs' TCPA claims based on a lack of any substantial media coverage. For purposes of this analysis, "[t]he danger of reliance is ... generally limited to actions that would be considered of sufficient public interest to warrant news coverage of either the public or trade-oriented variety [, and such reliance] can occur only on the part of those persons learning of the action who are sophisticated enough in the ways of the law to understand the significance of the class action allegation.'" *Mahan*, 2010 WL 4916417, at \*3 (quoting *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1315 (4th Cir. 1978)).

After a diligent search, there appear to be no news articles online that have been published regarding this action.  There are no blog posts, and no referral sites. Undersigned counsel did not advertise the case on their website either, or run any campaigns to find additional class members.

In addition, an examination of Plaintiff's case files reveals no communication between Plaintiff's Counsel and putative class members.  Plaintiff's Counsel directly communicated about this litigation only with the named Plaintiff. Thus, only these named class members could have any basis to rely upon Plaintiff's class allegations. Therefore, notice to the putative class is not required as they cannot claim any reliance on the instant action having not been contacted by Plaintiff's Counsel and given the lack of substantial media coverage, the decision to not further pursue claims against Defendants does not indicate any reliance on Plaintiffs' claims. The lack of collusion is amply demonstrated by the fact that neither Plaintiff nor Class Counsel will receive any compensation from Defendants in connection with the dismissal of the class claims, and further, such class claims are dismissed without prejudice. No other notice was given to the putative class members.

Moreover, even if a class member is relying on the existence of the Class and is monitoring the docket, he or she would have seen the Notice of Settlement and Request for Dismissal indicating the pending dismissal of class claims without prejudice. It is reasonable to infer no putative class members are actively following such case. Accordingly, there is no basis upon which to conclude that there is any danger of reliance by the general public on this action, given that there is no news coverage of the case.

ii.    *Putative Class Members' Claims Are Dismissed Without Prejudice*

Rule 23(e) requires notice to class members only "where the class will be bound by the proposal." If "the proposal is to dismiss the claims without prejudice and the class is not bound by any determination, notice may not be required." *Joseph*, 2012 WL 3542189, at *4. "The notice provision is aimed at protecting the interests of nonparty class members from unfair or collusive settlements and to discourage the assertion of a class action to secure an unjust private settlement for the named plaintiffs who then dismiss the putative class claims." *Robb v. Stericycle, Inc.*, CIV.A.05-1370, 2005 WL 2304475, at *8 (W.D. La. Aug. 19, 2005).

Here, there has been no resolution on the merits that would bind Class Members, the requested dismissal is without prejudice, and no notice has yet been disseminated to the Class. Thus, "because the proposal is to dismiss the claims without prejudice," no member of the Class are bound by the proposal and class notice is not required. *Stern v. DoCircle, Inc.*, SACV 12-2005 AG (JPRx) (C.D. Cal.) Robb, 2005 WL 2304475, at *9 (notice "would afford no benefit or protection to the class members"); *see also Joseph*, 2012 WL 3542189, at *4-*5 (concluding that notice was not necessary when notice was never disseminated to the class, and when there was "no determination in this matter that could serve to preclude or foreclose any of class members' claims").

///

///

iii.   *The Remaining Statute of Limitations for the Absent Class Members Does Not Militate in Favor of Notice*

In *Singer v. American Airlines Federal Credit Union*, the court determined that notice was not necessary due in part to the fact that absent class members had anywhere from a one year to a four year tolled statute of limitation once the individual claims were dismissed. *Singer v. American Airlines Federal Credit Union*, 2006 WL 3093759, at *4. "Based on the tolling of the statute of limitations as to the class which occurred by virtue of the filing of plaintiff's complaint, there is ample time for absent class members to commence a new action should they determine that such a case had merit." *Id.*; *see also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (holding that the filing of a class action tolls the statute of limitations on all individual claims covered by the class action).

Here, the filing of Plaintiff's complaint on December 19, 2019, tolled the statute of limitations for all of the ascertainable putative class members called before December 19, 2019. Furthermore, the statute of limitations under the TCPA is four (4) years, longer than most consumer-protection and privacy laws. The statute of limitations is not "rapidly approaching" for these putative class members and thus, they will suffer no prejudice from the dismissal of Plaintiff's class claims without notice. It can be inferred that any putative class member with an approaching Statute of Limitations likely did not intend to pursue such claims. Further, the tolling of the Statute during the pendency of this case would have benefitted putative class members, however, the termination of the matter does not unfairly prejudice such putative class members, especially since there is no evidence that any other class members are relying on this action.

This factor, regarding any "fast-approaching" statute of limitations, is of limited utility for the remainder of the putative class because their precise statute of limitations cannot be determined. It is impossible to calculate the remaining time for putative class members to file claims because it would require calculation based on the date each putative member received a call for solicitation, using an ATDS,

without consent, to a cellular phone. In this matter, although potential class members may be ascertained through phone records in Defendants' possession, determining the scope of consent, whether the purpose of the call was solicitation, and whether each call was placed to a cellular phone instead of a landline would require a specialized inquiry into the factual basis of each class members' communications with Defendants. Moreover, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1978).

What is known is that Plaintiff was contacted in October 2018, and that contact of a similar nature by leads sold by Brea would have occurred around this time period, i.e. approximately two years ago. This leaves nearly two years remaining on the statute of limitations for class members even if the claims were not tolled. The class claims are being dismissed without prejudice, and the relevant statutes of limitations have been tolled since the Complaint was filed on December 19, 2019. Accordingly, putative class members will be in precisely the same position they were in before the case was filed, if not, a better position.

The lack of media coverage of this action strongly suggests that any putative class member who was inclined to assert his/her own individual claim would have done so already or has ample time to pursue his or her own claims. Thus, dismissal of the class claims without notice would not materially disadvantage these putative class members.

iv.     *Plaintiff has not made Concessions of Class Interests to Further Her Own Interests*

Plaintiff's settlement does not affect the rights of putative class members such that notice is necessary. Plaintiff seeks to dismiss her individual claims with prejudice. The class claims are dismissed *without prejudice* and thus, absent putative class members' rights to bring TCPA claims are not compromised by Plaintiffs' individual settlement. *See, e.g., Castro*, 2007 WL 81905, at *2. In short,

the class' interests are not being compromised for the benefit of Plaintiff.

The circumstances of why this case was resolved individually are important. Putative class counsel determined, through an exchange of documents, including documents relating to the CFPB action (regarding Brea) and volkumino0us financial documents (regarding Higher Level) that there was no viable path to a classwide resolution in this case.  Had there been, counsel would have continued to litigate until such a result was achieved, as supported by the close to 100 class actions that The Law Offices of Todd M. Friedman have resolved on a class-wide basis to date.  This was a case where Defendants simply did not have the resources for such an outcome.  Defendants had legitimate defenses as well, both to merits and certification issues, but those were not the reason the case was resolved in this fashion.  Moreover, the amount of the settlement was modest and not indicative of collusion.

Because there is no prejudice to putative class members, no notice is required. *See Del Rio*, 2011 WL 1869881, at *3; *Lewis*, 2012 WL 2930867, at *4.

For the foregoing reasons, Plaintiff respectfully requests the Court permit the dismissal of the case on an individual basis, with prejudice to Plaintiff and without prejudice to the putative class members.  If the Court still has concerns, counsel stands prepared to address those concerns upon request.

Dated: February 26, 2021          LAW OFFICES OF TODD M. FRIEDMAN, P.C.


By: /s Adrian R. Bacon
    Adrian R. Bacon, Esq.

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 26th day of February, 2021, with:

United States District Court CM/ECF system

Notification sent electronically on this 26th day of February, 2021, to:

Honorable Judge Fernando M. Olguin
United States District Court
Central District of California

And to all counsel of record

<u>s/Adrian R. Bacon</u>
Adrian R. Bacon